UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Alisha Williams

     v.                               Civil No. 15-cv-186-JL
                                       Opinion No. 2016 DNH 120

Carolyn Colvin, Acting Commissioner,
Social Security Administration

**ORDER ON APPEAL**

Alisha Williams appeals the Social Security Administration's ("SSA") denial of her application for disability benefits.  An Administrative Law Judge ("ALJ") found that Williams suffered from bipolar disorder, anxiety disorder, borderline personality disorder, and alcohol abuse.  The ALJ nevertheless found that Williams was not disabled within the meaning of the Social Security Act because she has sufficient residual functional capacity ("RFC") to work at jobs that exist in significant numbers in the national economy.  See 42 U.S.C. § 423(d)(2)(A). The SSA Appeals Council subsequently denied Williams's request for review of the ALJ's decision, rendering the ALJ's decision final.  Williams timely appealed to this court, pursuant to 42 U.S.C. § 405(g).  In due course, Williams moved to reverse the SSA's decision and the SSA's Acting Commissioner moved to affirm the denial of benefits.

Williams argues that the RFC constructed by the ALJ was flawed because it did not correctly weigh the evidence of Williams's non-exertional limitations, leading to a conclusion that those limitations had little or no effect on the occupational base of unskilled work.  Thus, Williams argues, the ALJ improperly relied upon the Medical Vocational Guidelines ("Grid") rather than consulting a vocational expert to identify jobs that Williams could perform.  After review of the pending motions, the parties' joint statement of material facts and the administrative record, the court finds that substantial evidence does not support the ALJ's RFC determination.  The court therefore grants Williams's motion, denies the Acting Commissioner's motion, and remands the case to the SSA.

## I.  Standard of Review

Judicial review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision and (2) whether the Commissioner applied the correct legal standards.  Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).  The responsibility for weighing conflicting evidence and resolving issues of credibility belongs to the Commissioner and her designee, the ALJ.  Id. at 10; Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  The Commissioner's findings "as to any fact, if

2

supported by substantial evidence, shall be conclusive." 42
U.S.C. § 405(g).  Substantial evidence is such evidence as a
reasonable mind might accept as adequate to support a conclusion.
Richardson v. Perales, 402 U.S. 389, 401 (1971).  This is less
evidence than a preponderance but "more than a mere scintilla."
Id.; Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).
Accordingly, the court must affirm the ALJ's findings "if a
reasonable mind, reviewing the evidence in the record as a whole,
could accept it as adequate to support [the pertinent]
conclusion." Rodriquez, 647 F.2d at 222.  This is true "even if
the record arguably could justify a different conclusion."
Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3
(1st Cir. 1987).

## II.  <u>Background</u>[1]

In analyzing Williams's benefit application, the ALJ invoked
the required five-step process.  See 20 C.F.R. § 416.920.  First,
she concluded that Williams had not engaged in substantial work
activity after the alleged onset of her disability on May 11,
2009.  Next, the ALJ determined that Williams suffered from
several severe impairments:  bipolar disorder, anxiety disorder,

---

[1] The court recounts here only those facts relevant to the
instant appeal.  The parties' more complete recitation in their
Joint Statement of Material Facts (doc. no. 12) is incorporated
by reference.  See L.R. 9.1(d).

borderline personality disorder, and alcohol abuse.  See 20 C.F.R. § 416.1920(c).  At the third step, the ALJ concluded that Williams impairments – either individually or collectively – did not meet or "medically equal" one of the listed impairments in the Social Security regulations.  See 20 C.F.R. §§ 416.920(d), 416.925, & 416.926.  The ALJ next found that Williams had the RFC to perform a full range of work at all exertional levels, but with certain non-exertional limitations:  (i) she is able to understand, remember, and carry out short and simple instructions and maintain attention and concentration for two-hour blocks of time over an eight-hour workday; (ii) she is able to ask simple questions, accept instructions, and respond appropriately to criticism from supervisors; and (iii) she can respond appropriately to changes in the work setting.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).

After finding at step four that Williams could not perform any past relevant work, the ALJ proceeded to step five, at which the SSA bears the burden of showing that a claimant can perform other work that exists in the national economy.  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  Here, the ALJ, relying on Williams's testimony and medical records, concluded that Williams's non-exertional limitations – consisting of mental health issues – compromised her ability to work at all exertional

levels, but that those limitations had little or no effect on the occupational base of unskilled work.  The ALJ used the framework of section 204.00 of the Grid and found Williams not disabled within the meaning of the Social Security Act.

## III.  **Analysis**

### A.  Non-exertional impairment

Williams asserts two related arguments.  First, that the ALJ erred in finding that her non-exertional impairments had little or no effect on the occupational base of unskilled labor, and second, that the ALJ then erred by applying the Grid as a framework for her decision, rather than consulting a vocational expert.  The court agrees with both assertions.

While the ALJ concluded that Williams's mental health impairments could reasonably be expected to cause her symptoms, the ALJ also found Williams not credible concerning the intensity, persistence and limiting effects of those impairments (Admin. R. at 16).  The ALJ's reasoning was flawed, however.

First, the ALJ discounted Williams's testimony regarding the severity of her symptoms because of gaps in her treatment between 2009 and 2012.  "Such lack of treatment," the ALJ opined, "tends to indicate that the claimant's mental health symptoms are not nearly as limiting as her hearing testimony would suggest." Admin. R. at 17.  While treatment gaps are ordinarily a valid

basis for making such a decision, see Irlanda Ortiz v. Sec'y of
Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991), the
ALJ "must not draw any inferences about an individual's symptoms
and their functional effects from a failure to seek or pursue
regular medical treatment without first considering[,]" inter
alia, whether the claimant can afford treatment.  See SSR 96-7p,
1996 WL 374186 at *8; Hainey v. Colvin, 2014 DNH 254, 14.  Here,
the record is clear that Williams not only stopped treatment
because she lacked health insurance, Admin. R. at 40, 335, but
she resumed it shortly after a Medicaid-based insurance plan was
in place because she was feeling suicidal.[2]  Id. at 350.  There
is no indication in her decision that the ALJ considered this
sequence of events.

    The court also notes that the ALJ rather dismissively
described Williams's 2009 mental health treatment as having been
pursued "to avoid going to jail."  In fact, Williams described
the treatment as an alternative sentence imposed in a "mental
health court" after a 2009 assault arrest.  Id. at 42.  Rather
than simply an effort to "avoid going to jail," the mental health
court is a long-standing "alternative sentencing" program in

---

    [2] The record also reflects a suicide attempt in 2010  Admin.
R. at 333, and mental health treatment beginning in childhood.
Id. at 39-40.

Cheshire County, New Hampshire.[3]  Of note, one of the eligibility
criteria for the program is a mental health disorder.

Given these defects in the ALJ's negative credibility
determination, the court finds that the determination is not
supported by substantial evidence.  Moreover, the ALJ relied on
the same credibility determination in deciding to give little
weight to three consultative examiners (Dr. Gregory Korgeski,
Ph.D., Dawn Spokis, R.N., and Evelyn C.K. Harriot, Ed.D.) because
their opinions – which conflicted with the ALJ's eventual RFC
determination[4] – were based on self-reports which the ALJ
insupportably "deemed less than credible" for the reasons
described above.

The ALJ ultimately relied on the report of state agency
consultant Dr. Patricia Salt, whose opinion was adopted nearly
verbatim in formulating the RFC.  While giving greater weight to
the state's examiner than to other examiners is generally
permissible, it is not so in the context of this case, where an

---

[3]  See, Alternative Sentencing Program and Mental Health
Court, http://co.cheshire.nh.us/Alternative%20Sentencing%20MHC/
ASPMHCmain.htm (last viewed July 8, 2016).

[4] Dr. Korgeski opined that Williams would be "inconsistent
in her ability to concentrate and complete tasks due to mood
shifts."  (Admin. R. at 17).  Nurse Spokis opined that Williams
suffered "marked impairments" in social functioning, and
maintaining concentration, persistence and pace.  Id.  Dr.
Harriot concluded that Williams would be unable to make simple
decisions, maintain attendance, or interact appropriately with
others.  Id.

impermissible credibility determination was used to support giving less weight to the consultative examiners.

Finally, the court notes that the ALJ gave some weight to the opinions of Williams's treating counselor, Antoinette Ramine, and Mellissa Mullen, LICSW, each of whom described Williams's impairments as "moderate" in connection with Williams's application for state disability benefits.  However, there was discussion at the hearing in which claimant's counsel pointed out the state nomenclature regarding the severity of impairment differed from the Social Security terminology such that "moderate" in the former context was equivalent to "marked" in the latter.  The difference is significant, as a "marked" limitation would preclude use of the Grid.  The ALJ, in giving weight to Ramine and Mullen, does not appear to have considered these differences.  This, too, renders the ALJ's conclusion that Williams's non-exertional impairment had little or no effect on the occupational base of unskilled labor insupportable.

B.  Use of the Grid

It is true, as the Secretary contends, that an ALJ may rely on the Grid if a claimant's non-exertional limitations "impose no significant restriction on the range of work a claimant is exertionally able to perform."  Ortiz v. Sec'y of Health and Human Servs., 890 F.2d 520, 524 (1st Cir 1989).  But "an ALJ

typically should err on the side of taking vocational evidence when such a limitation is present . . . . And should an ALJ determine that the Grid can be relied on in such a case, we urge that the evidentiary support for that decision be enumerated . . . in great[] detail . . . ." Id. at 528. Here, as explained above, the ALJ's conclusion that Williams's mental health issues "imposed no significant restriction" cannot withstand scrutiny. As such the use of the Grid was improper, and the ALJ's decision must be reversed and the matter remanded for further proceedings.

**IV.** **Conclusion**

Claimant's motion to reverse[5] is granted.  The Acting Commissioner's motion to affirm[6] is denied.  The Clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: July 20, 2016

cc:  Bennett B. Mortell, Esq.
     Terry L. Ollila, AUSA

---

[5] Doc. no. 8.

[6] Doc. no. 11.

9